# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -- )
)
Edward Hayes, as Liquidator of Base ) ASBCA Nos. 59829, 59907
  Operation Services GmbH )
)
Under Contract Nos. DABN01-03-C-0025 )
              W912PE-04-D-0001 )

APPEARANCES FOR THE APPELLANT: William F. Savarino, Esq.
                                         Andrew K. Wible, Esq.
                                           Cohen Mohr LLP
                                         Washington, DC

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
                                           Army Chief Trial Attorney
                                           CPT Matthew A. Freeman, JA
                                           MAJ Michael G. Pond, JA
                                           Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE WOODROW
## ON APPELLANT'S MOTION TO DISMISS

### INTRODUCTION

Appellant, Edward Hayes, as Liquidator of Base Operation Services GmbH, moves to dismiss these appeals for failure to state a claim upon which relief may be granted. The Department of the Army (government) awarded the captioned contracts to Base Operation Services GmbH (BOS) for various maintenance services at Army bases in Germany (R4, tabs 1-2). BOS is a joint venture between SKE International GmbH, a German entity, and Burns & Roe Services Corp., an American entity.[1]

Appellant argues that neither the contractor, BOS, nor its liquidator, Edward Hayes, possessed the legal capacity to be sued under German law at the time the contracting

---

[1] SKE Technical Services GmbH (SKE-TS), apparently a subsidiary of one of the two companies making up the Base Operation Services GmbH joint venture, previously filed an appeal pursuant to the same contracts that are the subject of this appeal. On 23 March 2015, the Board dismissed that appeal based on the parties' agreement that SKE-TS is not a contractor with respect to these contracts and that the Board lacks jurisdiction to entertain SKE-TS's appeal. *SKE Technical Services GmbH*, ASBCA No. 59711, 15-1 BCA ¶ 35,941.

officer (CO) issued the final decisions that are the subject of these appeals. In its opposition, the government contends that the motion should be treated as one for summary judgment and that genuine issues of material fact preclude summary judgment. The government further contends that the liquidation was improper, because Mr. Hayes had a responsibility under German corporate law to notify the German court of all pending claims against the contractor under the contracts.

Appellant's motion seeks relief in the form of an "order declaring the [government's] claims to be a nullity" (app. mot. at 8). Such an order would be dispositive and would constitute a judgment on the merits of the government's claim. Therefore, we treat appellant's motion as one for summary judgment. At this stage in the proceedings, we need not decide whether the contractor or the liquidator possesses capacity to sue or be sued. Instead, we hold that genuine issues of fact remain and deny summary judgment in favor of appellant. We save for later to determine if the liquidator is the real party in interest.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 20 August 1998, Base Operation Services GmbH (BOS) was formed as a joint venture by Burns & Roe Services Corp. (BRSC) and SKE International GmbH (app. mot., ex. C ¶ 2).

2. On 21 July 2003, the U.S. Army Wiesbaden Contracting Center (government) awarded cost-plus-award-fee (CPAF) Contract No. DABN0l-03-C-0025 (contract 0025) to BOS for base maintenance services in Hanau and Giessen, Germany. The awarded contract included a base period of performance of 1 August 2003 – 31 July 2004, as well as four (4) 12-month options. (R4, tab 1)

3. On 28 January 2004, the U.S. Army Regional Contracting Office – Seckenheim (government) awarded CPAF Contract No. W912PE-04-D-0001 (contract 0001) to BOS for base maintenance services in Darmstadt, Germany. The awarded contract included a base period of performance of 1 February 2004 – 31 March 2004, as well as four (4) 12-month options. (R4, tab 2)

4. Contract Nos. 0001 and 0025 (hereinafter, the contracts) either included in full text or incorporated by reference the following relevant Federal Acquisition Regulation (FAR) and Department of Defense FAR Supplement (DFARS) clauses: FAR 52.216-7, ALLOWABLE COST AND PAYMENT (FEB 2002) (R4, tab 1 at 27, tab 2 at 27); FAR 52.215-2, AUDIT AND RECORDS – NEGOTIATION (JUN 1999) (R4, tab 1 at 26, tab 2 at 25); FAR 52.233-1, DISPUTES (DEC 1998) (R4, tab 1 at 26), DISPUTES (JUL 2002) (R4, tab 2 at 37); FAR 52.242-1, NOTICE OF INTENT TO DISALLOW COSTS (APR 1984) (R4, tab 1 at 26, tab 2 at 38); and DFARS 252.233-7001, CHOICE OF LAW (OVERSEAS) (JUN 1997) (R4, tab 1

2

at 27, tab 2 at 44). Only contract 0025 included FAR 52.242-4, CERTIFICATION OF FINAL INDIRECT COSTS (JAN 1997) (R4, tab 1 at 26).

5. BOS was formed for the sole purpose of performing the contracts (app. mot., ex. A ¶ 3).

6. On 17 November 2008, BOS Managing Director Edward A. Hayes filed with the Defense Contract Audit Agency (DCAA) a "Certificate of Indirect Costs" and "Certification for Claimed Program Management Office (PMO) Costs" for the period 1 August 2006 – 31 July 2007 relating to, among others, the contracts (R4, tab 3).

7. On 13 March 2009, Mr. Hayes filed with DCAA a "Certificate of Indirect Costs" and "Certification for Claimed Program Management Office (PMO) Costs" for the period 1 August 2007 – 30 September 2008 relating to, among others, the contracts (R4, tab 4).

8. Performance of the contracts was complete by 31 January 2009 (app. mot., ex. A ¶ 6).

9. BOS made its final distribution of assets to its members in 2009. Following this distribution, BOS had no assets. (App. mot., ex. A ¶ 7)

10. On 12 August 2011, Mr. Hayes filed with DCAA a "Certificate of Indirect Costs" and "Certification for Claimed Program Management Office (PMO) Costs" for the period "October 1, 2008 through contract end" relating to, among others, the contracts (R4, tab 5).

11. In August 2012, upon the closure of RCO-Seckenheim, the Theater Contracting Center (TCC) in Kaiserslautern, Germany, assumed contract administration responsibilities for the contracts (gov't opp'n ¶ 10).

12. On 5 March 2013, DCAA issued a "Form 1" notice to BOS notifying BOS that it owed the U.S. Army €2,567,560 due to disapproved costs under the contracts (R4, tab 7 at 2).

13. On 27 March 2013, DCAA completed Audit Report Nos. 2191-2007B10100002, 2191-2008B10100015 and 2191-2009B10100014 (Revised) (R4, tab 8).

14. In January 2013, BOS submitted comments in response to DCAA Audit Report Nos. 2191-2007B10100002, 2191-2008B10100015 and 2191-2009B10100014, disputing and challenging DCAA's conclusions (R4, tab 6).

3

15. On 28 May 2013, the members of BOS formally confirmed the final liquidation balance sheet and authorized Mr. Hayes to finalize the liquidation (app. mot., ex. A ¶ 14).

16. In August 2013, "the German tax authorities notified the register court that the liquidation of BOS could not be approved since the tax audit was not finalized" and BOS members transferred money into BOS specifically to pay BOS German tax obligation (app. mot., ex. A ¶¶ 15-16).

17. On 17 October 2014, according to "Amtsgericht-Wuerzburg" the German Municipal Court in Wuerzburg, BOS was deleted from the German commercial register (app. mot., ex. A ¶ 17).

18. On 17 November 2014, the CO issued her first contracting officer's final decision (COFD) and demand for payment to BOS asserting a right to recover payments it made to BOS for certain indirect and PMO costs covering fiscal year 2007 (R4, tab 9).

19. On 12 March 2015, the CO issued a second COFD and demand for payment to BOS pertaining to indirect and PMO cost payments made to BOS for fiscal years 2008 and 2009 (R4, tab 13).

20. By counsel, Hayes as liquidator of BOS timely appealed the COFDs to the Board on 12 February 2015 and 1 April 2015, respectively. The Board consolidated both appeals.

DECISION

Applicable Legal Standard

Appellant's motion is styled as a motion to dismiss for lack of jurisdiction, because "neither BOS nor its former liquidator legally existed or had capacity to be sued at the time the government issued the COFDs" (app. br. at 1-2). However, appellant's motion seeks relief in the form of a holding that "the Government's claims are a nullity" and asserts that "they are claims for which relief cannot be granted" (app. br. at 2). Such an order would be dispositive and would constitute a judgment on the merits of the government's claims. In addition, appellant's motion relies on matters outside the pleadings, including evidence of principles of foreign law. Therefore, we treat appellant's motion as one for summary judgment. *Dick Pacific/GHEMM, JV*, ASBCA No. 55829, 08-2 BCA ¶ 33,937 at 167,941; *see also* FED. R. CIV. P. 12(b). As the party asserting the defense, appellant bears the burden of proof.

The guidelines for summary judgment are well established; the granting of summary judgment is appropriate where there are no genuine issues of material fact and

the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *DIRECTV Group, Inc. v. United States*, 670 F.3d 1370, 1374 (Fed. Cir. 2012). The movant has the burden to establish that there are no material facts in dispute. A material fact is one which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable inferences are drawn in favor of the non-movant. *Id.* at 255. At the summary judgment stage, we do not resolve controversies, weigh evidence, or make determinations of credibility. *Id.* at 253.

Discussion

Appellant uses the term "expired" to describe the status of the contracts in January 2009. According to appellant's factual allegations, the contracts expired on 31 January 2009, when performance was complete and the government made its "final and full payment." (App. mot. at 2, ¶ 4) While it may be true that performance was complete under the contracts, these allegations do not accurately describe the remaining rights and obligations of the parties under of the contracts.

Both parties agree that the contracts were cost-plus-award-fee contracts (gov't opp'n ¶ 3; app. mot., ex. A ¶ 5). Moreover, there is no dispute that the contracts incorporated the full text of FAR 52.216-7, ALLOWABLE COST AND PAYMENT (FEB 2002), which defines "final payment" and sets forth the requirements that must be met before final payment is made (R4, tab 1 at 27-30, tab 2 at 27-29).

Pursuant to the Allowable Cost and Payment clause at 52.216-7(a)(1)-(2), "[t]he Government will make payments to the Contractor when requested as work progresses," and "[i]nterim payments made prior to the final payment under the contract are contract financing payments." Pursuant to FAR clause 52.216-7(g), "[a]t any time or times before final payment, the Contracting Officer may have the Contractor's invoices or vouchers and statements of costs audited." Furthermore, pursuant to FAR clause 52.216-7(g)(1)-(2), "[a]ny payment may be...[r]educed by amounts found by the Contracting Officer not to constitute allowable costs; or...[a]djusted for prior overpayments or underpayments."

Under the Allowable Cost and Payment clause, final payment cannot occur until the parties execute an agreement setting forth the final indirect cost rates, FAR 52.216-7(d)(3), and the contractor has submitted a completion invoice or voucher including the settled amounts and rates pursuant to FAR 52.216-7(d)(5). *See* FAR 52.216-7(h) (setting forth requirements for final payment). Up until final payment occurs, the contracting officer may have the contractor's invoices or voucher and statements of cost audited. FAR 52.216-7(g). Moreover, the "[f]ailure by the parties to agree on a final annual indirect cost rate shall be a dispute within the meaning of the Disputes clause." FAR 52.216-7(d)(4).

5

In simple terms, this means that payments made under the contract are provisional in nature and that the rights and obligations of the parties remain unresolved until "final payment" is made.

The parties' factual allegations demonstrate that the parties had not completed the process set forth in FAR 52.216-7 prior to 28 May 2013, the date on which BOS "formally confirmed the final liquidation balance sheet and authorized Mr. Hayes to finalize the liquidation" (app. mot., ex. A ¶ 14). For example, on 13 March 2009, and on 12 August 2011, Mr. Hayes filed with the DCAA certificates of indirect costs and claim program management office costs relating to the contract (gov't opp'n at 2-3, ¶¶ 7, 9). In December 2012, the DCAA issued to BOS an audit report concerning the contracts, to which BOS responded in January 2013 (app. mot. at 3, ¶ 7; gov't opp'n at 3, ¶ 11). On 5 March 2013, DCAA issued a "Form 1" notice to BOS notifying BOS that it owed the U.S. Army €2,567,560 due to disapproved costs under the contracts (SOF ¶ 13). On 27 March 2013, DCAA completed Audit Report Nos. Nos. 2191-2007B10100002, 2191-2008B10100015 and 2191-2009B10100014 (Revised) (SOF ¶ 14).

All of these activities are part of the process of reaching agreement on final indirect cost rates pursuant to FAR 52.216-7(d). *See SRI Int'l*, ASBCA No. 56353, 11-2 BCA ¶ 34,853 at 171,451 (explaining process for determining final indirect costs rates). Until this process is complete and the parties have agreed to final indirect costs rates, and until the contractor has timely submitted a completion invoice to reflect the settled amounts and rates for all years of a physically complete contract pursuant to FAR 52.216-7(d)(5), there can be no "final payment" under the Allowable Cost and Payment clause. *See* FAR 52.216-7(h) (setting forth requirements for final payment). Moreover, the absence of an agreement between the parties on the final annual indirect cost rate constitutes a dispute within the meaning of the Disputes clause. FAR 52.216-7(d)(4). Pursuant to the Disputes clause, which was incorporated by reference into Contract No. DABN01-03-C-0025 and incorporated by full text in Contract No. W912PE-04-D-0001, either party possesses the right to bring a claim for payment of money in a sum certain (R4, tab 1 at 26, tab 2 at 37). FAR 52.233-1 (JUL 2002).

In this case, therefore, there has been no "final payment" under the contracts and the government retains the right to assert claims based on its contention that incurred costs were deemed unallowable or not reimbursable. Given that the contracts remained open at the time BOS was deleted from the German corporate registry, we cannot at this time hold that BOS lacked the capacity to be sued at the time the CO issued her final decisions. Indeed, there are a host of unresolved factual issues that raise genuine issues of material fact.

For example, appellant contends that the government was on notice that BOS was in liquidation and that the government could have issued its claims against BOS prior to the time that BOS was deleted from the German corporate registry. In particular, BOS

alleges that, "[b]etween December 2009 and December 2012, BOS had several meetings and communications with DCAA and one meeting with the Government contracting officer concerning the post-closeout audit of the Contracts" and that "[d]uring these meetings, the fact that BOS was in liquidation was openly discussed" (app. mot., ex. A ¶ 10). For its part, the government contends that BOS was on notice that the contracts were cost contracts and that BOS's certifications of incurred costs would be audited, and that the contracts were subject to adjustment in the event that incurred costs were deemed unallowable or not reimbursable (gov't opp'n at 7). These competing versions of the facts demonstrate that there are unresolved factual issues regarding each party's understanding of the contractor's corporate status at various points in time.

There also is uncertainty regarding whether BOS had actual knowledge of the government's potential claims when it filed its final liquidation papers on 30 September 2014. For example, the DCAA Form 1 contains language suggesting that the CO would file a claim seeking reimbursement of the disapproved costs: "The purpose of this DCAA Form 1 is to initiate ACO action in rendering a final decision on the disapproved costs" (R4, tab 7 at 19). However, there are unresolved factual issues regarding why more than 20 months passed between when DCAA issued the Form 1 on 5 March 2013 and the CO issued the final decision on 17 November 2014. Equally unknown are the representations BOS made to its liquidator, Mr. Hayes, and to the German courts. Also unknown is whether BOS could have left assets in the firm to satisfy any potential claims arising out of the contracts, or whether it could have transferred assets into BOS in order to satisfy any remaining obligations under the contracts, as it did to satisfy outstanding German tax liability (SOF ¶ 16).

Finally, there are outstanding issues of German law, such as whether potential claims arising under open cost-plus-award-fee contracts must be satisfied before liquidation, and, more generally, whether BOS's liquidation was lawful under German corporate law. Moreover, we cannot say whether, under German corporate law, contractual liabilities would survive dissolution. At this point in time, there is not sufficient information in the record for us to rule on these issues as a matter of law.

7

## CONCLUSION

For these reasons, we hold that genuine issues of fact remain and that summary judgment in favor of appellant is denied.

Dated: 23 June 2016

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59829, 59907, Appeals of Edward Hayes, as Liquidator of Base Operation Services GmbH, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8